[Cite as *Akron Bar Assn. v. DiCato,* 130 Ohio St.3d 394, 2011-Ohio-5796.]

AKRON BAR ASSOCIATION *v.* DiCato.

[Cite as *Akron Bar Assn. v. DiCato,* 130 Ohio St.3d 394, 2011-Ohio-5796.]

*Attorney misconduct, including engaging in undignified or discourteous conduct that is degrading to a tribunal and knowingly or recklessly making false statements concerning the integrity of a judicial officer—Six-month suspension stayed on condition.*

(No. 2011-1023—Submitted August 8, 2011—Decided November 17, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-093.

_____

**Per Curiam**.

{¶ 1} Respondent, Edward Michael DiCato of Green, Ohio, Attorney Registration No. 0055350, was admitted to the practice of law in Ohio in 1991. On December 6, 2010, relator, Akron Bar Association, filed a complaint charging DiCato with a single count of misconduct arising from a telephone conversation with a judge's bailiff in which DiCato made disparaging remarks about the judge.

{¶ 2} Although DiCato provided written responses to relator's letters of inquiry, signed for a certified letter containing relator's notice of intent to file a complaint, and accepted service of the complaint, he failed to file an answer.

{¶ 3} Relator moved for default pursuant to Gov.Bar R. V(6)(F). A master commissioner appointed by the Board of Commissioners on Grievances and Discipline reviewed the evidence, made findings of misconduct and conclusions of law, and recommended that DiCato be suspended from the practice of law for six months, all stayed on the condition that he engage in no further misconduct. The board adopted the master commissioner's report in its entirety. We agree that DiCato engaged in undignified and discourteous conduct that was degrading to a tribunal by making a false statement, either intentionally or with

reckless disregard for the truth, impugning the integrity of Judge Mary Margaret Rowlands. His conduct adversely reflects on his fitness to practice law and warrants the sanction recommended by the board.

**Misconduct**

{¶ 4} The evidence demonstrates that during a telephone conversation with Judge Rowlands's bailiff about fee applications that were awaiting the judge's approval, DiCato called the judge a lying, cheating bitch. As a result of DiCato's comments to the bailiff, Judge Rowlands issued an order directing him to appear and show cause why he should not be held in contempt of court. In an effort to resolve the conflict with the judge, DiCato sent her a letter offering an explanation for his conduct. In his letter, DiCato stated, "We are even on the same team as democrats and I should be supporting you, which I would certainly like to do."

{¶ 5} DiCato appeared at the contempt hearing and pleaded guilty. He explained that at the time he made the disparaging comment about the judge, he was upset about his pending fee applications and had been taking oxycodone for a medical condition. He also apologized to the judge for his conduct. He was found to be in direct criminal contempt for calling into question the dignity of the court as well as the character and reputation of a sitting judge. He was sentenced to 48 hours in the Summit County Jail, suspended on the condition that he refrain from similar conduct in the future, and ordered to pay $500 to the Summit County Court within 120 days.

{¶ 6} The master commissioner and board found that DiCato's conduct violated Prof.Cond.R. 3.5(a)(6) (prohibiting a lawyer from engaging in undignified or discourteous conduct that is degrading to a tribunal), 8.2(a) (prohibiting a lawyer from knowingly or recklessly making false statements concerning the integrity of a judicial officer), and 8.4(h) (prohibiting a lawyer from engaging in conduct that adversely reflects on the lawyer's fitness to

practice law), but found that the evidence did not support the alleged violation of Prof.Cond.R. 3.5(a)(1) (prohibiting a lawyer from seeking to influence a judicial officer, juror, prospective juror, or other official by means prohibited by law). We adopt these findings of fact and misconduct and dismiss the allegation that DiCato violated Prof.Cond.R. 3.5(a)(1).

## Sanction

**{¶ 7}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties that the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. In making a final determination, we also weigh evidence of the aggravating and mitigating factors listed in Section 10(B) of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline ("BCGD Proc.Reg."). *Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21.

**{¶ 8}** The master commissioner and board found DiCato's lack of a prior disciplinary record and his cooperation during the disciplinary investigation to be mitigating factors. See BCGD Proc.Reg. 10(B)(2)(a) and (d). We agree, but also find that he failed to file an answer or otherwise appear in this disciplinary action and thereby ceased to cooperate in the disciplinary process. See BCGD Proc.Reg. 10(B)(1)(e). We find that the sanctions imposed in the contempt proceeding—a 48-hour stayed jail term and a $500 fine—are also mitigating.

**{¶ 9}** The aggravating factor found by the master commissioner and board is that DiCato refused to acknowledge the wrongful nature of his conduct and instead asserted that his statements to the bailiff were an exercise of his right to freedom of expression and free speech. See BCGD Proc.Reg. 10(B)(1)(g). Having reviewed the evidence, however, we find that the only reference that DiCato made to his right to freedom of expression and free speech was his

statement "I am somewhat surprised that my statements are not protected by the First Amendment, but that discussion is not within the scope of this document." And although DiCato attempted to demonstrate that his conduct was in response to aggravating conduct by the judge and her bailiff, he did apologize for his actions and accept responsibility by pleading guilty to contempt. He further stated, "In any event I was wrong in making those statements. The statements were inappropriate." Therefore, we conclude that DiCato has acknowledged the wrongful nature of his conduct.

{¶ 10} Relator recommended that DiCato be suspended from the practice of law for two years, with reinstatement conditioned upon the completion of his Gov.Bar R. X continuing-education requirements and certification from an appropriate agency or individual that he is not alcohol- or drug-dependent.

{¶ 11} The master commissioner and board cited several cases in which we have publicly reprimanded attorneys who have impugned the integrity of the judiciary, failed to maintain their composure and used profanity in court or during depositions, or diminished public confidence in the judiciary. Finding that DiCato's conduct did not occur in public and involved only a single outburst during a telephone conversation with the judge's bailiff, the master commissioner and board recommend that we impose a six-month suspension from the practice of law, all stayed on the condition that he engage in no further misconduct.

{¶ 12} In *Disciplinary Counsel v. Grimes* (1993), 66 Ohio St.3d 607, 614 N.E.2d 740, we publicly reprimanded an attorney for making inappropriate and disrespectful statements about a judge to a newspaper reporter and making inappropriate statements to a judge during a hearing.

{¶ 13} At the opposite end of the spectrum, we suspended an attorney for one year for breaching courtroom decorum by making several intemperate comments directed toward the judge and placing a disrespectful, discourteous, and profanity-laced statement on the record at the conclusion of a jury trial. *Bar Assn.*

*of Greater Cleveland v. Milano* (1984), 9 Ohio St.3d 86, 9 OBR 315, 459 N.E.2d 496.

{¶ 14} DiCato's conduct in this case falls somewhere between that of Grimes's and Milano's. Although his statement was not publicized like that of Grimes, it directly challenged the honesty and integrity of a sitting judge. While the parties in *Grimes* stipulated that Grimes's statements were the " 'result of emotional stresses created by a set of unusual circumstances that are unlikely to recur,' " *Grimes* at 609, DiCato has provided no such proof. Although DiCato alluded to the possibility that a chronic back condition, prescription pain medication, and financial difficulties had influenced his conduct, he did not offer sufficient proof of these factors to warrant any mitigating effect. And in contrast to Milano's intemperate comments throughout trial, respondent's conduct involved a single outburst during a brief telephone conversation.

{¶ 15} Having considered DiCato's conduct, the applicable aggravating and mitigating factors, and the sanctions imposed for similar misconduct, we conclude that a six-month suspension stayed on the condition of no further misconduct is the appropriate sanction for DiCato's ethical violations.

{¶ 16} Accordingly, Edward Michael DiCato is suspended from the practice of law in Ohio for six months, but the suspension is stayed on the condition that he commit no further misconduct. If DiCato fails to comply with the condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxed to DiCato.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and McGEE BROWN, JJ., concur.

_____

R. Scott Haley and Ann Marie O'Brien, for relator.

_____